J-S76003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAHMIN HOLDEN | |
| Appellant | No. 1859 EDA 2015 |

Appeal from the PCRA Order entered June 5, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0014951-2007

BEFORE:  STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 19, 2017**

Appellant, Rahmin Holden, appeals *pro se* from the June 5, 2015 order entered in the Court of Common Pleas of Philadelphia County, dismissing his petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  Following review, we affirm.

Following a jury trial, Appellant was convicted on July 14, 2009 of first-degree murder and various other crimes arising out a shooting on the 6600 block of Upland Street in Philadelphia.[1]  Appellant was sentenced on the same day to a mandatory term of life imprisonment.  The trial court denied

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The guilty verdict was rendered at the conclusion of Appellant's second trial.  His first trial ended in a hung jury.

Appellant's post-sentence motions and Appellant pursued an appeal to this Court. On June 1, 2011, we affirmed his judgment of sentence and on August 21, 2012, our Supreme Court denied his petition for allowance of appeal.

On September 18, 2012, Appellant filed a timely *pro se* PCRA petition. Counsel was appointed and subsequently filed a **Finley**[2] no-merit letter and a motion to withdraw as counsel. On March 23, 2015, following a review of the pleadings and an independent review of the record, the PCRA court issued a notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907.[3] The notice included a directive to Appellant to submit any information to supplement or establish his claim within 20 days of the date of the notice. Appellant requested an extension for filing a response and the PCRA court granted that request. Appellant filed his response within the time allotted. By order entered on June 5, 2015, the PCRA court dismissed Appellant's petition and granted counsel's motion to withdraw. This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

---

[2] **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

[3] We note that the judge for the PCRA proceedings was also the presiding judge for Appellant's trial.

In his Rule 1925(b) statement of errors complained of on appeal, Appellant raised three errors, *i.e.*, that the PCRA court erred in adopting PCRA counsel's no-merit letter because counsel was ineffective for failing to investigate potential alibi witnesses and for failing to call the alibi witnesses; that PCRA counsel could not have made a conscientious examination of the record or consulted with Appellant as reflected in the no-merit letter; and that Appellant had three additional meritorious issues to raise in an amended petition.[4]  Rule 1925(b) Statement of Errors Complained of on Appeal, 10/22/15, at 1-2.  In its Rule 1925(a) opinion, the PCRA court rejected Appellant's first two claimed errors based on the court's independent review of the record and found the third error waived because Appellant failed to raise it in his response to the Rule 907 notice.  PCRA Court Rule 1925(a) Opinion, 11/13/15, at 1-13.

In his brief filed with this Court, Appellant presents five issues for our consideration.  For ease of discussion, we have rearranged them in an attempt to mirror the errors asserted in Appellant's 1925(b) statement as follows:

1. Whether the [PCRA] court erred in dismissing [Appellant's] claims that trial counsel was ineffective for failing to investigate and call potential alibi witnesses to testify?

_____

[4] Although Appellant suggested he had three additional meritorious issues to be raised in an amended petition, he actually listed five issues in his Rule 1925(b) statement.

2. Whether the [PCRA] court erred by failure to conduct [its] own full independent review of the record [before] dismissing [Appellant's] PCRA [petition] when meritorious issues existed within the record?

3. Whether the [PCRA] court erred by dismissing [Appellant's] PCRA [petition] pursuant to counsel[']s "no merit letter" he filed, which failed to meet the standard procedures for a "no merit letter?"

4. Whether PCRA counsel should [have] filed a "no merit letter" when he failed to raise and address a substantial amount of issues [Appellant] "raised" and asked to have amended to his PCRA petition?

5. Whether PCRA counsel was ineffective for failing to properly amend [Appellant's] PCRA petition by neglecting to mention any of [Appellant's] constitutional claims, therefore deeming them insufficiently pleaded and the PCRA court erred/abused [its] discretion for denying petition?

Appellant's Brief at 3.

We begin by setting forth our scope and standard of review. As our Supreme Court has explained, "In PCRA proceedings, an appellate court's scope of review is limited by the PCRA's parameters; since most PCRA appeals involve mixed questions of fact and law, the standard of review is whether the PCRA court's findings are supported by the record and free of legal error. *Commonwealth v. Pitts*, 981 A.2d 875, 878 (Pa. 2009) (citing *Commonwealth v. Strong*, 761 A.2d 1167, 1170 n. 3 (Pa. 2000)).

In his first issue, Appellant argues PCRA court error for dismissing his claim of trial counsel ineffectiveness for failing to investigate and call

potential alibi witnesses to testify. This issue was preserved in the first error asserted in Appellant's 1925(b) statement.[5]

At issue here is the alibi testimony Appellant contends would have been provided by two of his cousins, Lanea Staten and Brianna Burrell, who were 16 and 12 years old, respectively, at the time of the murder for which Appellant was convicted. The PCRA court provides a thorough discussion of the testimony the girls would have offered and explains that trial counsel had a reasonable basis for not calling either witness, especially in light of more favorable but conflicting evidence offered at trial by the girls' mother. **See** PCRA Court Rule 1925(a) Opinion, 11/13/15, at 5-11. We find the PCRA court's findings in this regard are supported by the record and are free of legal error. We conclude Appellant is not entitled to any relief on his first issue and we hereby adopt the trial court's discussion of this issue as our own and incorporate it herein by reference.

In his second issue, Appellant alleges PCRA court error for failure to conduct its own meritorious review of the record before dismissing Appellant's PCRA petition. In his Rule 1925(b) statement, Appellant asserted that PCRA counsel could not have made a conscientious examination of the record and notes of testimony or consulted with

---

[5] Issues not preserved in an appellant's 1925(b) statement are waived. **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011).

Appellant as suggested in the No-Merit Letter but does not contend that the PCRA court failed to conduct its own review.  Although the issue is likely properly considered waived, we also recognize that the first error raised in Appellant's 1925(b) statement implies that the PCRA court erred in adopting the No-Merit Letter and in granting counsel's petition to withdraw.  To the extent Appellant's contention could be interpreted to reflect a failure on the part of the PCRA court to conduct its own meritorious review, we shall address the issue.

Our willingness to consider the issue, however, does not aid Appellant.  Instead, our review leads to the inescapable conclusion that the PCRA court did conduct an independent review of the record, as indicated in the 1925(a) opinion.  PCRA Court Rule 1925(a) Opinion, 11/13/15, at 2.  The PCRA court's summaries of the procedural history and factual background are a reflection of that.  *See id.* at 1-4.  Appellant's suggestions that either PCRA counsel or the PCRA court failed to conduct a thorough examination of the record are belied by counsel's No-Merit Letter and by the PCRA court's 1925(a) opinion.  To the extent Appellant's second issue has been properly preserved, it fails for lack of merit.

In his third and fourth issues, Appellant attacks the No-Merit Letter itself, contending it did not comply with the requirements for a no-merit letter and failed to raise issues Appellant requested counsel to address in an amended petition.  In essence, Appellant is presenting the third error

asserted in his 1925(b) statement, *i.e.*, that counsel failed to include additional meritorious issues in an amended petition. However, as the PCRA court properly concluded, those additional issues were waived for Appellant's failure to raise those claims in response to the court's Rule 907 Notice. PCRA Court Rule 1925(a) Opinion, 11/13/15, at 11-13. As such, we likewise shall not consider them. **Commonwealth v. Ford**, 44 A.3d 1190, 1198 (Pa. Super. 2012).[6] Therefore, Appellant's third and fourth issues do not afford him any basis for relief.

In his fifth issue, Appellant argues that PCRA counsel was ineffective for failing to amend Appellant's PCRA petition to assert any of his constitutional claims. As this issue was not preserved in Appellant's 1925(b) statement, it is waived. **See** Pa.R.A.P. 1925(b)(4)(vii); **Hill**, 16 A.3d at

---

[6] Appellant's response to the PCRA court's Rule 907 Notice focuses on the failure of trial counsel to call the two alibi witnesses identified above. Appellant also refers to trial counsel's failure "to investigate non-witness whereabouts." Response to Rule 907 Notice, 5/21/15, at 3. However, the alleged "non-witness" is not identified in the response. To the extent Appellant attempted to refer to eyewitness, Angelic Kirkman Smith, PCRA counsel explained that the witness was unavailable at trial and that her preliminary hearing testimony was properly admitted at trial in accordance with Pa.R.E. 804(b)(1) and **Commonwealth v. Bazemore**, 614 A.2d 684, 685 (Pa. 1992) (unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the prior proceedings). Therefore, even if Appellant can be found to have preserved that issue in his Rule 907 response, it does not provide any basis for relief.

494.[7] Even if not waived, Appellant has not provided any clue as to the nature of his "constitutional claims." While he did check the box on the PCRA petition claiming eligibility for relief based upon a constitutional violation, PCRA Petition, 9/18/12, at 2, the only other reference to constitutional violations appears on page 7 of his petition where he simply asked that the PCRA court consider violations of the 6th and 14th Amendments to the United States Constitution. *Id.* at 7. Nowhere in the petition does Appellant provide any insight into the nature of any alleged constitutional violations. In his brief, Appellant mentions the Sixth Amendment and Due Process in the context of PCRA counsel's failure to raise issues not preserved in Appellant's response to the Rule 907 Notice and trial counsel's failure to call Appellant's cousins as alibi witnesses, but does not otherwise develop any constitutional arguments. *See* Appellant's Brief at 13-15; 21-24. To the extent Appellant might be referring to the inability to confront unavailable eyewitness Angelic Kirkman Smith whose preliminary hearing testimony was read to the jury, that issue was addressed and dismissed by PCRA counsel, and the PCRA court found it waived because

_____

[7] In **Commonwealth v. Lauro**, 819 A.2d 100, 109 (Pa. Super. 2003), this Court recognized that if, on a claim of PCRA counsel's ineffectiveness first raised on appeal, we determine there is a reasonable probability that, but for PCRA counsel's act or omission, the result of the PCRA proceeding would have been different, we would be required to remand for a new PCRA hearing. No such reasonable probability exists here. **See also Commonwealth v. Burkett**, 5 A.3d 1260, 1273 (Pa. Super. 2010).

Appellant did not raise the issue in response to the Rule 907 Notice. *Finley No-Merit Letter*, 2/4/15, at 4; PCRA Court Rule 1925(a) Opinion, 11/13/15, at 12-13.[8] Further, we note that Appellant did not even mention the issue of the unavailable witness in his PCRA petition. Rather, the only facts offered in support of the petition related to trial counsel's failure to "investigate, interview or subpoena" alibi witnesses Lanea Staten and Brianna Burrell. *Id.* at 3. Appellant is not entitled to any relief based on his fifth issue.

We conclude that the PCRA court's findings are supported by the record and are free of legal error. Therefore, we shall affirm the order dismissing Appellant's PCRA petition. In the event of further proceedings, the parties shall attach a copy of the PCRA Court's Rule 1925(a) Opinion to their filing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2017

---

[8] As reflected in n. 6, *supra*, to the extent Appellant may have asserted the unavailable eyewitness issue in his Rule 907 response, the issue does not provide any basis for relief.

PHILADELPHIA COURT OF COMMON PLEAS
CRIMINAL TRIAL DIVISION

COMMONWEALTH                  :

                            CP-51-CR-0014951-2007

                 :

v.

**FILED**      :

          Superior Court Docket
          No.:

RAHMIN HOLDEN                1859 EDA 2015

NOV 1 3 2015      :

Sarmina, J.          Criminal Appeals Unit
November 13, 2015    First Judicial District of PA

OPINION

PROCEDURAL HISTORY:

On July 14, 2009,[1] following a jury trial[2] before this Court, Rahmin Holden (hereafter,

petitioner) was found guilty of murder of the first degree (H-1), criminal conspiracy (F-1), two

counts of recklessly endangering another person (M-2), possessing instruments of crime (PIC)(M-1),

and carrying a firearm without a license (F-3).[3] On that same day, petitioner was sentenced to the

mandatory term[4] of life imprisonment.[5] On July 24, 2009, post-sentence motions were filed, which

were denied by this Court on November 18, 2009. Petitioner filed a timely notice of appeal to the

---

[1] This was petitioner's second jury trial. The first trial, held on February 4 and 5, 2009, resulted in a mistrial due to a hung jury.

[2] At trial, petitioner was represented by William R. Spade, Esquire.

[3] 18 Pa.C.S. §§ 2502(a), 903(a)(1), 2705, 907(a), and 6106(a)(1), respectively.

[4] 18 Pa.C.S. § 1102(a).

[5] As to the charge of criminal conspiracy, petitioner was sentenced to a concurrent term of not less than 15 years nor more than 30 years confinement. As to each charge of recklessly endangering another person, petitioner was sentenced to a concurrent term of not less than one year nor more than five years confinement (an amended sentencing Order was filed on July 27, 2009, changing this sentence to not less than one nor more than two years confinement for each charge of recklessly endangering another person). As to the charge of carrying a firearm without a license, petitioner was sentenced to a concurrent term of not less than two and a half years nor more than seven years confinement. As to the charge of PIC, petitioner was sentenced to a concurrent term of not less than nine months nor more than five years confinement. Notes of Testimony (N.T.) 7/14/2009 at 231.

Superior Court on December 3, 2009. On June 1, 2011, the Superior Court affirmed petitioner's judgment of sentence,[6] and on August 21, 2012, our Supreme Court denied petitioner's petition for allowance of appeal.[7]

On September 18, 2012, petitioner filed a timely *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA)[8]. Counsel was appointed,[9] and, on February 4, 2015, filed a Finley "no merit" letter and motion to withdraw as counsel.[10] Having reviewed the pleadings and conducted an independent review, on March 23, 2015, this Court sent petitioner notice of its intent to deny and dismiss his PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907 (907 Notice). Consistent with its 907 Notice, on June 5, 2015 this Court denied and dismissed petitioner's PCRA petition. This timely appeal followed.[11]

**FACTS:**

On April 28, 2006, Terrell Prat (the victim) was sitting in the driver's seat of his vehicle smoking marijuana with his two friends – Rodney Smith (Smith) and Ronnie Jackson (Jackson) – on the 6000 block of Upland Street, when shots were fired into the vehicle. N.T. 7/9/09 at 34-48-49, 69; N.T. 7/13/09 at 264-65. A total of four bullets hit the victim, all of which were fired at close

---

[6] Commonwealth v. Holden, No. 3581 EDA 2009, slip op. (Pa.Super., June 1, 2011) (memorandum opinion).

[7] On February 20, 2012, our Supreme Court granted petitioner's petition for allowance of appeal *nunc pro tunc* due to counsel withdrawing without leave of court, and directed petitioner to file a petition for *allocatur* within 30 days. Petitioner's petition for allowance of appeal was then denied on August 21, 2012. Commonwealth v. Holden, No. 139 EAL 2012, *allocatur denied* (Pa., Aug. 21, 2012).

[8] 42 Pa.C.S. §§ 9541-9546.

[9] Barnaby Wittels, Esquire, was appointed to represent petitioner on collateral attack.

[10] Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988).

[11] Petitioner filed a notice of appeal on June 22, 2015. Pursuant to petitioner's request, this Court granted petitioner an extension of time to file a 1925(b) statement of matters complained of on appeal pursuant to this Court's July 15, 2015 Order. Petitioner filed a statement of matters complained of on appeal on October 22, 2015.

range – three of the bullets hit the victim in his head or face, one of which also passed through his neck, while the final bullet went through his right forearm. N.T. 7/9/09 at 36-38.

The shooting was witnessed by both surviving passengers in the car, fourteen year old Smith, who was grazed by a bullet in the back during the incident, and eighteen year old Jackson, who was shot in the leg. N.T .7/13/09 at 265-66; N.T. 7/14/09 at 17. Jackson testified that he saw Jay and petitioner[12] shooting, and he saw petitioner standing "[i]n the front of the car, near the front passenger—front driver window…shooting in the car" and aiming at the victim's head N.T. 7/14/09 at 17-18. Smith identified petitioner and Jay as the shooters as well, and stated that he had known petitioner, or "Boo," for about one year. N.T. 7/13/09 at 56-57.[13] Smith also identified petitioner as the shooter from a photo array shown to him by police. Id. at 59.

The shooting was also witnessed by a bystander, Angelic Kirkman Smith,[14] who also identified petitioner[15] as the shooter. N.T. 7/13/09 at 132. As Ms. Smith was walking home from the Salt and Pepper Deli on Upland Street, she witnessed petitioner and another man walk out from a parking lot, and begin shooting at the burgundy vehicle that the victim was in with his two friends. Id. at 136-37. Ms. Smith testified that she saw petitioner shooting into the driver's side of the vehicle, at the victim. Id. at 137.

---

[12] At trial, Jackson testified that he saw "Jay and Boo Boo" shooting, and identified petitioner as the person referred to as Boo Boo. N.T. 7/14/09 at 17. Jackson knew Jay and Boo Boo from seeing them around The Bottom, around 3800 Fairmount. N.T. 7/13/09 at 267-68. The person identified as Jay was never identified or arrested by police. N.T. 7/13/09 at 281-82.

[13] Smith's statement of June 30, 2006 was admitted for its truth pursuant to Brady/Lively. Commonwealth v. Brady, 71 A.2d 34, 36 (Pa.Super. 1987); Commonwealth v. Lively, 610 A.2d 7 (Pa. 1992).

[14] Angelic Kirkman Smith was unavailable to testify at trial, so her testimony from a prior hearing was read into evidence for the jury's consideration, pursuant to Commonwealth v. Bazemore, 614 A.2d 684, 685 (Pa. 1992) ("[A]n unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the prior proceeding.").

[15] Ms. Smith testified that petitioner was known as Boo Boo. N.T. 7/13/09 at 132. She also testified that she had known petitioner for five or six years prior to this shooting, and saw him almost every day. Id. at 133.

3

Ballistics evidence indicated that at least two guns, a 9 millimeter semiautomatic pistol and a revolver, were fired. Id. at 221. Two shots were fired from the revolver and nine shots were fired from a semiautomatic. Id. Firearms examiner Officer John Cannon testified that the shots from the revolver came from in front of the car, whereas the shots from the semiautomatic came from the driver's side of the car. Id. at 249, 251.

## LEGAL ANALYSIS:

Petitioner raises the following issues on appeal:[16]

1. The PCRA Court erred in dismissing petitioner's claim that trial counsel was ineffective for failing to investigate and call potential alibi witnesses to testify.[17]

2. PCRA counsel was ineffective for failing to make a conscientious examination of the records and notes of testimony or consult with petitioner.

3. PCRA counsel was ineffective for failing to raise the following claims in an amended petition:

   a) Trial counsel was ineffective for failure to request a missing witness instruction for his two alibi witnesses Brianna Burrell and Lanea Staten.

   b) Trial counsel was ineffective for failure to request an alibi defense instruction where the record clearly supported the instruction.

   c) Trial counsel was ineffective for failure to request that the trial court dismiss several jurors who were falling asleep, snoring, sneezing out loud, and at least one juror whom was recognized for inappropriate behavior.

   d) Trial counsel was ineffective for failure to object to this Court's missing witness instruction for Commonwealth witness Angelic Kirkman Smith, and allowing a prior sworn testimony to be read to the jury as if the witness had testified in person, which deprived petitioner the opportunity to adequately cross-examine or confront the witness.

   e) Trial counsel was ineffective for failure to request that the statements of potential witnesses Brianna Burrell and Lanea Staten be read to the jury for consideration.

---

[16] These issues have been rephrased for ease of disposition.

[17] In his statement of matters complained of on appeal, petitioner separates this issue into two claims: 1) trial counsel's ineffectiveness for failure to investigate potential alibi witnesses; and 2) trial counsel's ineffectiveness for failure to call potential alibi witnesses. Statement of Matters Complained of on Appeal, 10/22/15. However, for ease of disposition, this Court will consolidate the two claims into one.

4

**1. The PCRA court erred in dismissing petitioner's claim that trial counsel was ineffective for failing to investigate and call potential alibi witnesses to testify.**

First, petitioner claims that this Court erred in dismissing petitioner's claim that trial counsel was ineffective for failing to investigate and call potential alibi witnesses Brianna Burrell (Burrell) and Lanea Staten (Staten) and present their testimony at trial. Specifically, petitioner claims that Burrell and Staten would testify that petitioner was inside of Burrell and Staten's home on the evening of the murder, babysitting them so that their mother was able to attend a birthday party. Because trial counsel did investigate these witnesses, and reasonably chose not to call them as a part of his trial strategy, this claim is without merit and fails.

According to the Pennsylvania Supreme Court in Commonwealth v. Balodis, 747 A.2d 34, 343 (Pa. 2000), counsel is presumed effective, and under 42 Pa.C.S. § 9543(a), petitioner has the burden of proving ineffective assistance of counsel. In order to be eligible for PCRA relief due to ineffective assistance, petitioner is required to prove that such assistance "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Petitioner "must prove (1) that the underlying claim has arguable merit, (2) that counsel's conduct was without a reasonable basis designed to effectuate his or her client's interest, and (3) that counsel's ineffectiveness prejudiced [petitioner]." Commonwealth v. Allen, 833 A.2d 800, 802 (Pa.Super. 2003) (citations omitted). "All three prongs of this test must be satisfied. If [petitioner] fails to meet even one prong of the test, his conviction will not be reversed on the basis of ineffective assistance of counsel." Commonwealth v. O'Bidos, 849 A.2d 243, 249 (Pa.Super. 2004).

In order to show that trial counsel was ineffective for failing to call or investigate witnesses, petitioner must show that:

> 1) the witness existed, 2) the witness was available to testify for the defense, 3) counsel knew of, or should have known of, the existence of the witness, 4) the witness was willing to

5

testify for the defense, and 5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. . . .

Commonwealth v. Matias, 63 A.3d 807, 810-11 (Pa.Super. 2013), *citing* Commonwealth v. Sneed, 45 A.3d 1096, 1108-09 (Pa. 2012).

The only one of the five factors which is in issue here is number five, as the witnesses did exist, were available to testify for the defense, counsel knew of their existence, and the witnesses were willing to testify for the defense.

"A failure to call a witness is not per se ineffective assistance of counsel for such decision usually involves matters of trial strategy." Commonwealth v. Auker, 681 A.2d 1305, 1319 (Pa. 1996). For a petitioner to prevail on an ineffective assistance of counsel claim he must prove that the choice made by counsel was an unreasonable one. "In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." Commonwealth v. Rollins, 738 A.2d 435, 441 (Pa. 1999).

Because trial counsel had a reasonable basis for not calling Staten and Burrell to testify, and further, because Staten and Burrell's failure to testify did not prejudice petitioner, this claim fails.

During a colloquy with this Court regarding petitioner's right to testify at trial and call witnesses, petitioner mentioned that he had two additional alibi witnesses, of which this Court had been unaware:

| The Court: | Okay. So you've never given Mr. Spade any other names besides those two people that you expect to call? The one is his investigator; the other one, Ms. Padgett came from you, right? Or from his investigation. |
| Petitioner: | It was the other two people, two people I was babysitting. |
| The Court: | What other two people? |
| Petitioner: | My little cousins, Lanea and Brianna. |
| The Court: | How old are they? |
| Petitioner: | 15 and 19. |

N.T. 7/13/2009, at 291-92.

6

This Court then held an *ex parte* discussion[18] with trial counsel regarding his strategic decisions for not calling Staten and Burrell:

The Court: Give the reasons why you decided previously not to call them, that it would not be in your client's interest to call them.

Mr. Spade: I sent a couple of letters to Mr. Holden, who was incarcerated as [sic] SCI Greene during the course of, I am going to say, 2008. I think I was appointed in January of 2008. I sent two letters, possibly three – I have been able to document two that I kept. I think there was a third one I sent to him – asking whether he had any alibi witnesses; asking a whole bunch of other questions about investigations that should be done in the case. The first letter was probably sent in spring of 2006. I sent another one in August of 2006.[19] In both of these letters, I asked him specifically: Do you have an alibi witness? I did not receive anything back. I did receive letters from him; I received no information back with regard to alibi witnesses. Finally, I sent him a third letter, I believe, in late October or early November of 2008 asking yet again: Do you have an alibi witness? You haven't responded to this question. He wrote back and said something to the effect of, I am working on it. Okay? That response gave me pause. . . . So finally, at that point, he made reference to the fact that he was – maybe I should get go get [sic] the letter or something. But he made reference to the fact that he was at home on the night that it happened; and that his cousin, Latika Padgett, could verify that. Okay? . . . The become [sic] line is: I did not learn of the existence of these two kids that were 9 and 16 at the time until – I think it is in the notes from the first trial. I did not learn about it until like several days before the [sic] putting her on. Okay? . . . At that point, I thought, Your Honor, that the existence or putting on those two kids would have actually opened her [Ms. Padgett] up to a more – it would have her opened up to a cross-examination I thought would have made her alibi

---

[18] The following discussion occurred, with Assistant District Attorney Bridget Kirn present, prior to the *ex parte* discussion:

The Court: Why didn't you put them on any kind of witness list, Mr. Spade, having become aware of them at the last trial when presenting the alibi defense and knowing what the requirements of alibi are.

Mr. Spade: Your Honor, I did not want to – as I thought about it, I did not want to open up Ms. Padgett to certain lines of cross-examination, which I would be happy to tell Your Honor in camera. But I have since now changed my thinking on that. . . . Well, Your Honor . . . I would like a chance to put my reasons on the record, outside the hearing of Ms. Kirn.

The Court: Absolutely. And you can memorialize it to your file. I will certainly be happy to hear your reasons for it, which will be sealed for now.

N.T. 7/13/2009, at 293-94, 297.

[19] There was either a mistake in the notes of testimony here, or Mr. Spade misspoke, but the notes should reflect that letters were sent in spring of 2008 and August of 2008. Mr. Spade was not appointed until January of 2008, and the killing had occurred on April 28, 2006.

7

|              | testimony practically useless. Okay? And that's the reason why – it was a judgment call. |
|--------------|---|
| The Court:   | Did you ever interview the two children? |
| Mr. Spade:   | I did. Yes. . . . The girls, you're talking a 9-year-old girl and a 16-year-old girl. They could completely – given the performance of the alibi witness being interviewed by me, I had no idea – I suspected that they would end up being very bad witnesses and might really have their credibility shredded. |

N.T. 7/13/2009 at 4-14, *ex parte* discussion.

However, at trial, counsel did present the alibi witness testimony of Latika Padgett (Padgett) – Staten and Burrell's mother – who testified that Holden was at her house at the time of the murder:

| Mr. Spade:    | Tell me what happened on that night at about 11 o'clock on April 28 of 2006? |
|---------------|---|
| Ms. Padgett:  | Well, Rahmin came in the house by 10:30, quarter to 11:00, because I was going to my aunt's birthday party that night. I had to be at my aund [sic] aunt's birthday party by 12 o'clock because they singing happy birthday because her birthday was not actually until 29th. |
| Mr. Spade:    | Let me stop you there. What's your aunt's name? |
| Ms. Padgett:  | April. |
| Mr. Spade:    | April what? |
| Ms. Padgett:  | April Holden. Same as my last name. |
| Mr. Spade:    | Is she Rahmin's aunt, too? |
| Ms. Padgett:  | Yes. |
| Mr. Spade:    | You said her birthday is what? |
| Ms. Padgett:  | April 29th. |
| Mr. Spade:    | So her birthday is April 29th. And we're talking about April 28th at 11 o'clock? |
| Ms. Padgett:  | Yes, we were. |
| Mr. Spade:    | So you were supposed to go to her birthday party. Tell us what happened? |
| Ms. Padgett:  | So earlier that day, I told Rahmin that he needed to be back in the house by 11 o'clock so he could babysit my children. |
| Mr. Spade:    | He needed to be back in the house? |
| Ms. Padgett:  | Yeah. By 11 o'clock because I was leaving to go to the birthday party. |
| Mr. Spade:    | Okay. |
| Ms. Padgett:  | He got home about 10:30, quarter to 11:00. I didn't leave out until about 11:15, 11:30, because I had to wait for my ride to get to the birthday party. |
| Mr. Spade:    | Okay. |
| Ms. Padgett:  | And we was in the house, me, Rahmin and my daughters. |

N.T. 7/14/2009, at 102-03.

Trial counsel then argued this alibi during closing argument:

8

We also put on an alibi. We put on Latika Padgett, his cousin. . . . The thing with the alibi evidence that's interesting is, alibi evidence is always after the fact, you know, somebody gets accused of a crime, a very serious crime. And it may not be for a long time; it may not be for months afterwards that the person finds out that they're accuse [sic] of the crime. Sometimes it is not even years. And then at that point, you have to go back, and you have to figure out: What was I doing on that day? What was I doing? In this case, you heard her testify that when she finally had definitive proof that he had been charged with this homicide, when Mr. Holden's mother read her the notes of testimony for the preliminary hearing, and it wasn't rumor, and it wasn't gossip, but now she knew, she went back and she started thinking about it. . . .

In this case, she had an event. She had an event that stuck out to her. . . . There was a birthday party in the family. The homicide happened on April 28th, and the aunt, their aunt, had her birthday on April 29th. So she was able to go back and remember where she was and the fact that Mr. Holden was with her. Now, you heard her testify that the homicide happened at about 11:40 P.M. Did Ms. Padgett say she was with Mr. Holden at 11:40 P.M.? No. She said she left for that party. Mr. Holden got there at 10:45. She left for that party between 11:15 and 11:30. She remembers it being closer to 11:30. The homicide happened at 11:40. This is an interesting thing. I would think that if a witness is going to lie, the witness would actually cover that ten minutes, that ten or 15 minutes.

There was no reason why she couldn't just say, oh, yeah. I left for the party at 11:45. I left for the party at 11:50. She could have easily done that. But she didn't. She testified to what she remembered. She left a little gap there. I submit to you that that has the ring of truth to it.

Id. at 154-55.

PCRA counsel hired an investigator to determine if Staten and Burrell's alibi testimony was consistent with Padgett's and would have changed the outcome at trial. Both Staten and Burrell were interviewed by PCRA counsel's investigator, and stated that their testimony would have included the following information:

Brianna Burrell, who was twelve years old at the time of this murder, stated that petitioner showed up at her home on April 28, 2006 around 10:30 P.M. to babysit her and her sister while their mom attended a birthday party. Burrell's aunt, Tamika Briggs, came to pick Padgett up from the house that evening, and they left at 10:45 P.M. Burrell went to sleep at 11 P.M. in her bedroom – the middle bedroom on the second floor of the house. Petitioner slept in the living room downstairs. She did not know if petitioner left the house while she was asleep that night.

9

<u>Investigator's Record of Phone Interview with Brianna Burrell</u>, 1/23/2015. Lanea Staten, who was sixteen years old at the time, also stated that petitioner arrived at her home to babysit her and her sister at 10:30 P.M. Staten stated that her mother left "no later than 11 o'clock," with her aunt Tamika Briggs. Staten stayed up talking to her boyfriend on the phone until 2 or 3 A.M. Staten stated that petitioner slept in the middle bedroom with Burrell. She did not think that petitioner left the house after her mother left, but did not provide a definite answer. <u>Investigator's Record of Phone Interview with Lanea Staten</u>, 1/23/2015.

Because trial counsel had a reasonable basis for his decision not to call Staten and Burrell as alibi witnesses, this claim fails. Petitioner presented the alibi witness testimony of Latika Padgett at trial. Padgett testified that it was about a 20 to 25 minute drive from her home at 217 North 58th Street to the 6000 block of Upland Street, where this murder occurred. N.T. 7/14/2009 at 106-07. Padgett's testimony was that she left her home for the party between 11:15 and 11:30 P.M. If the jury believed Padgett's account, this would make it difficult or impossible for petitioner to drive from Padgett's home to the scene of the murder in time to commit the murder. However, the jury clearly did not lend much credence to Padgett's testimony, as petitioner was found guilty of the crime.

Further, even assuming Staten's and Burrell's recollections, as recounted to the investigator over the phone nearly six years after the date in question, to be accurate,[20] the addition of their testimony likely would not have changed the outcome at trial. Not one of the three witnesses could place petitioner at Padgett's home at the time of the shooting, which occurred at 11:40 P.M. Burrell would have been asleep nearly an hour before the shooting took place, Padgett had already left for the birthday party, and Staten was likely on the phone with her boyfriend in her bedroom. Staten

---

[20] Counsel, at the time of trial, articulated that calling the two children to testify would call Padgett's testimony into question.

10

did not state what time she last saw petitioner that evening. Neither Staten nor Burrell could place petitioner at their home after 11 P.M. Staten and Burrell recalled that Padgett left the house around 10:45 P.M. to 11 P.M., and neither of them could state that they were in petitioner's presence at 11:40 P.M. The "absence of the testimony of [these two child witnesses]" was not "so prejudicial as to have denied defendant a fair trial." Therefore, petitioner has not established prejudice, and this claim fails.

## 2. PCRA counsel was ineffective for failing to make a conscientious examination of the records and notes of testimony or consult with petitioner.

Petitioner's second claim is that PCRA counsel was ineffective for failing to make a conscientious examination of the records and notes of testimony or consult with petitioner. As PCRA counsel complied with the rules set forth in Turner/Finley,[21] this claim fails.

In accordance with the rules set forth in Commonwealth v. Turner, and Commonwealth v. Finley, after PCRA counsel has conducted an independent review of the record and determines that there are no issues of arguable merit, the following requirements must be met:

> 1) PCRA counsel must submit a no merit letter detailing the nature and extent of his or her review;
> 2) The no merit letter by PCRA counsel must list each issue the petitioner wished to have reviewed;
> 3) The PCRA counsel's no merit letter must include an explanation of why the petitioner's issues were meritless;
> 4) The PCRA court must conduct its own independent review of the record; and
> 5) The PCRA court must agree with counsel that the petition was meritless.

Finley, 550 A.2d at 215.

In the instant case, PCRA counsel complied with all of the requirements set forth in Turner/Finley. Contrary to petitioner's assertion, PCRA counsel's Finley letter adequately detailed the nature and extent of his review: "My investigation of this matter included a careful review of: 1) the trial transcripts of the case; 2) the court file and dockets; 3) all prior filings available; 4) all letters

---

[21] Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988).

11

and material sent to me by Petitioner; 5) discovery provided by trial counsel[;] and 6) trial counsel's file. I also conferred on several occasions with trial counsel, who also represented Petitioner on his direct appeal." Finley Letter, 3/18/15, at 2. Throughout the Finley letter, PCRA counsel makes reference to, and cites to the record. PCRA counsel attached as an exhibit to his Finley letter a portion of the trial records. Finley Letter, Exhibit A. PCRA counsel also hired an investigator to interview the two alibi witnesses who petitioner claims should have been called to testify at trial. Finley Letter, Exhibit B. Further, PCRA counsel provided a summary of the facts of this case, addressed the issues in petitioner's *pro se* petition, and cited applicable case law to explain why petitioner's claims lacked merit. Therefore, PCRA counsel did in fact adequately review the record. See Zerby v. Shannon, 964 A.2d 956, 961 (Pa. Cmwlth. Ct. 2009) (finding that PCRA counsel's review of the record satisfied the requirements of Turner/Finley where PCRA counsel stated the extent of review, summarized the record, and reviewed applicable case law).

As PCRA counsel did comply with Turner/Finley, this claim fails.

**3. PCRA counsel was ineffective for failing to raise the following claims in an amended petition:**

a) Trial counsel was ineffective for failure to request a missing witness instruction for his two alibi witnesses Brianna Burrell and Lanea Staten.

b) Trial counsel was ineffective for failure to request an alibi defense instruction where the record clearly supported the instruction.

c) Trial counsel was ineffective for failure to request that the trial court dismiss several jurors who were falling asleep, snoring, sneezing out loud, and at least one juror whom was recognized for inappropriate behavior.

d) Trial counsel was ineffective for failure to object to this Court's missing witness instruction for Commonwealth witness Angelic Kirkman Smith, and allowing a prior sworn testimony to be read to the jury as if the witness had testified in person, which deprived petitioner the opportunity to adequately cross-examine or confront the witness.

e) Trial counsel was ineffective for failure to request that the statements of potential witnesses Brianna Burrell and Lanea Staten be read to the jury for consideration.

12

Petitioner's third claim is that PCRA counsel was ineffective for failing to raise five additional claims of trial counsel ineffectiveness in an amended petition. However, as petitioner failed to raise these claims in his response to this Court's 907 Notice, these claims of PCRA counsel ineffectiveness have been waived.

[W]hen counsel files a *Turner/Finley* no-merit letter to the PCRA court, a petitioner must allege any claims of ineffectiveness of PCRA counsel in a response to the court's notice of intent to dismiss. Commonwealth v. Ford, 44 A.3d 1190, 1198 (Pa.Super. 2012); see also Commonwealth v. Rykard, 55 A.3d 1177, 1186 (Pa. 2012) (finding petitioner's claims of PCRA counsel's effectiveness to have been "properly preserved, having been raised at the PCRA level in the first instance"). As petitioner has not raised these claims in his response to this Court's 907 Notice, they have been waived, and therefore this claim fails.

For the foregoing reasons, the dismissal of petitioner's PCRA petition should be affirmed.

BY THE COURT:

M. TERESA SARMINA          J.

13